```
                                              FILED
                                           APR 18 2019
                                    CLERK, U.S. DISTRICT COURT
                                  SOUTHERN DISTRICT OF CALIFORNIA
                                  BY                      DEPUTY
```

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT L. EDWARDS,<br><br>                  Plaintiff,<br>v.<br><br>C4 PLANNING SOLUTIONS, LLC and DOES 1 through 50, inclusive,<br><br>                  Defendants. | Case No.: 3:18-cv-02144-BEN-AGS<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br>**[Doc. 4]** |

Plaintiff Albert L. Edwards filed this lawsuit against Defendants C4 Planning Solutions, LLC and DOES 1 through 50 for nine state law claims related to his employment with C4 Planning. C4 Planning moves to dismiss the Complaint for *forum non conveniens* or, in the alternative, for transfer to the Southern District of Georgia under 28 U.S.C. § 1404(a). [Doc. 4.] The motion is **GRANTED**.

## I.    BACKGROUND[1]

This case concerns Mr. Edwards's employment dispute with C4 Planning, related to work he performed in California between 2013 and 2018. In January 2013, C4 Planning's

---

[1] The Court accepts as true the facts alleged in Mr. Edwards's Complaint, Doc. 1. *See Vivendi SA v. T–Mobile USA, Inc.*, 586 F.3d 689, 691 n. 3 (9th Cir. 2009); *see also Aguas Lenders Recovery Group v. Suez, S.A.*, 585 F.3d 696, 697 (2d Cir. 2009) (accepting the facts alleged in the complaint as true where the case was dismissed on *forum non conveniens* grounds without a factual hearing).

owner and president, James Fennell, recruited Mr. Edwards to work at C4 Planning. At the time, Mr. Fennell and Mr. Edwards had already known one another for approximately ten years. On January 21, 2013, Mr. Edwards began working for C4 Planning as its Vice President of Business Development and Strategy. In that position, he reported directly to Mr. Fennell, supported C4 Planning's headquarters, and developed new business and increased existing contract values for C4 Planning. *See* [Doc. 1-2 at ¶ 11.]

Around the same time that C4 Planning sent an Offer Letter to Mr. Edwards, C4 Planning also sent an Employment Agreement, which he signed on January 25, 2013. Paragraph 8(c) of the Employment Agreement contained a bold, capitalized forum selection clause:

> (c) This Agreement shall be construed and enforced in accordance with the laws of the State of Georgia. **IN THE EVENT OF DISPUTE HEREUNDER, IT IS AGREED THAT VENUE LIES EXCLUSIVELY IN A COURT OF COMPETENT JURISDICTION IN BURKE COUNTY, GEORGIA AND SUCH COURT SHALL BE A PROPER FORUM IN WHICH TO ADJUDICATE SUCH DISPUTE. THE PARTIES AGREE TO WAIVE ANY DEFENSE THAT THEY MAY HAVE BASED UPON IMPROPER VENUE OR LACK OF PERSONAL JURISDICTION, AND TO SUBJECT THEMSELVES TO THE JURISDICTION AND VENUE OF ANY SUCH AFORESAID COURT.**

[Doc. 4-1, P. 9 ¶ 8(c) (emphasis in original).]

At the time he signed the Employment Agreement, Mr. Edwards alleges that he did not know the location of C4 Planning's headquarters or that Mr. Fennell lived in Burke County, Georgia. Since beginning his employment with C4 Planning, Mr. Edwards has visited both Mr. Fennell's home in Burke County, Georgia and C4 Planning's headquarters in Richmond County, Blythe, Georgia. During his employment, Mr. Fennell often remarked in Mr. Edwards's presence that "no one wanted to go to court in Burke County, Georgia."

Mr. Edwards's employment with C4 Planning ended in February 2018. Mr. Edwards brought suit in the Superior Court of California, San Diego County, for nine claims related to C4 Planning's alleged refusal to pay commissions and compensation

owed to him under the parties' Employment Agreement: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) failure to pay commission wages in violation of the Labor Code §§ 221 and 223; (4) failure to provide accurate and itemized wage statements in violation of Labor Code §§ 226(e); (5) failure to maintain accurate wage records in violation of Labor Code §§ 1174; (6) failure to pay all wages due upon separation of employment in violation of Labor Code §§ 202 and 203; (7) violation of California Business and Professions Code §§ 17200; (8) accounting; and (9) declaratory relief. On September 14, 2018, C4 Planning removed to this Court. [Doc. 1.] C4 Planning's Motion to Dismiss followed. [Doc. 4.]

## II. DISCUSSION

C4 Planning argues the forum selection clause in the parties' Employment Agreement requires dismissal for *forum non conveniens* or, in the alternative, transfer under 28 U.S.C. § 1404(a) to the U.S. District Court for the Southern District of Georgia.

### A. Legal Standard

A federal court sitting in diversity applies federal law to determine the enforceability of a forum selection clause. *Manetti–Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). "The appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atlantic Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013). "[B]ecause both § 1404(a) and the *forum non conveniens* doctrine from which it derives entail the same balancing-of-interests standard, courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum [through 28 U.S.C. § 1404(a)]." *Id.* at 61.

On a motion to dismiss for *forum non conveniens*, the moving party must establish: "(1) that venue is proper in the transferor district; (2) that the transferee district is one where the action might have been brought; and (3) that transfer will serve the convenience of the parties and witnesses and will promote the interest of justice." *Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F. Supp. 503, 506 (C.D. Cal. 1992). Once venue is

3

found proper in both districts, a court must consider public factors relating to "the interest of justice" and private factors relating to "the convenience of the parties and witnesses." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). When there is a valid forum selection clause, however, "[t]he calculus changes," and the court must modify its § 1404(a) analysis in three ways. *Atlantic Marine*, 571 U.S. at 63. "First, the plaintiff's choice of forum merits no weight," and the plaintiff, who is defying the forum selection clause, "bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* Second, the court should only consider public interest factors, not private ones. *Id.* Finally, "a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id.* at 64. A forum-selection clause is "given controlling weight in all but the most exceptional cases." *Id.* at 60.

Generally, a forum selection clause is "prima facie valid" and thus enforceable, absent a strong showing "that enforcement would be unreasonable and unjust, or that the clause [is] invalid for such reasons as fraud or overreaching." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). "The party seeking to avoid the forum selection clause bears a 'heavy burden of proof.'" *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998) (en banc). Federal courts have recognized only three grounds for declining to enforce a forum selection clause: (1) where the inclusion of the clause in the contract was the result of "fraud or overreaching," (2) if the party seeking to avoid the clause would be effectively deprived of its day in court in the forum specified in the clause, or (3) if enforcement would contravene a strong public policy of the forum where the suit was filed. *Murphy v. Schneider Nat'l Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2003).

**B. Analysis**

C4 Planning argues dismissal is warranted because the forum selection clause ("FSC") is valid and requires the suit to be heard in Georgia state court in Burke County. In contrast, Mr. Edwards argues the FSC is unenforceable because (1) it is the result of C4 Planning's fraud or overreach, and (2) it violates California public policy. Mr. Edwards

4

further contends that regardless of the FSC's validity, the FSC does not cover the vast majority of his claims, which cannot be transferred. Finally, as to C4 Planning's alternative argument, Mr. Edwards contends that transfer under § 1404(a) is not appropriate. The Court addresses each argument in turn.[2]

*1. Lack of Fraud or Overreach*

Mr. Edwards argues the FSC was the product of fraud or overreach because neither C4 Planning nor the FSC disclosed to Mr. Edwards that C4 Planning "had no connection to Burke County." [Doc. 5 at p. 11.] The Court disagrees. Although C4 Planning is headquartered in Richmond County, Georgia, C4 Planning still has at least some connection to Burke County, Georgia: C4 Planning has used the same business address in Burke County since at least 2007 (9528 Highway 56, Midville, Georgia 30441), and C4 Planning's owner and President, Mr. Fennell, lives in Burke County where he conducts substantial business.[3] Given that connection, the Court cannot find C4 Planning's selection

---

[2] In conjunction with his Opposition, Mr. Edwards requested judicial notice of three types of documents: property tax statements assessed by Richmond County where C4 Planning is headquartered, map data showing C4 Planning's headquarters in Richmond County, and property records for 9528 Highway 56, Midville, Georgia 30441. [Doc. 5-2.]
In conjunction with its Reply, C4 Planning requested judicial notice of the Georgia Secretary of State websites reflecting C4 Planning's business address and corporate registration since 2013. [Doc. 6-3.] Because the Court need not rely upon any of these documents, the requests are both **DENIED as moot**. There is no dispute that C4 Planning has a business address registered at the Midville, Georgia address or that C4 Planning's headquarters are in Richmond County, Georgia.

[3] After briefing on this motion, Mr. Edwards filed a supplemental brief, arguing that C4 Planning misrepresented its principal office's location in Burke County because C4 Planning changed its "Registered Office County" with the Georgia Secretary of State from Emanuel County, Georgia to Burke County, Georgia shortly after Mr. Edwards filed his Opposition. *See* [Doc. 11.] C4 Planning responded that Mr. Edwards's new argument was not relevant to the Court's analysis. Specifically, C4 Planning argued that, since 2007 and well before Mr. Edwards began his employment in 2013, C4 Planning's business address was and continues to be in Midville, Georgia, which is located in Burke County. C4 Planning expressed its confusion about why the business's county listing changed on the website from Burke to Emanuel, but regardless, the "County of Registered Office" box did

5

of Burke County was somehow a product of bad faith. *See, e.g., Madanat v. First Data Corp.*, 2011 WL 208062, at *2 (N.D. Cal. Jan. 21, 2011) (finding defendants' facilities in New York to be sufficient to undermine plaintiff's bad faith allegations); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991) (finding any suggestion of bad faith motive for Florida forum selection clause was belied by business's principal place of business there and the fact that many of its cruises use Florida ports).

Mr. Edwards's argument that C4 Planning obtained the forum selection clause by overreaching because it "failed to disclose key facts" is also misplaced. Mr. Edwards argues that C4 Planning should have disclosed its inclusion of an FSC favoring Burke County, Georgia and the fact that C4 Planning was not headquartered there. The alleged "failure" to disclose such facts to Mr. Edwards, however, does not amount to overreaching. First, Mr. Edwards does not contend that C4 Planning somehow concealed these facts or prevented him from inquiring about or negotiating the FSC. Moreover, the Court is unclear about why Mr. Edwards could not have identified his future company's headquarters. Indeed, at the time of the job offer, C4 Planning was likely not a new company to Mr. Edwards; he had known the company's president and owner, Mr. Fennell, for at least ten years prior to accepting employment. Further, C4 Planning hired Mr. Edwards as its Vice President of Business Development and Strategy, a position he described in his Complaint as directly reporting to Mr. Fennell and, indeed, "support[ing] [its] *headquarters*." [Doc. 1-2 at ¶ 11 (emphasis added).]

---

not undermine the undisputed fact that C4 Planning's business address was and is in Burke County, Georgia.

The Court finds Mr. Edwards's supplemental argument inconsequential to the analysis at hand. The discrepancy appears to be related to the address's zip code, which covers both counties. Regardless of what county is listed in the website's "County of Registered Office" box, however, C4 Planning's registered business address is and was located in Burke County, Georgia. Mr. Edwards could have determined C4 Planning's Burke County location prior to signing the Employment Agreement.

6

Likewise, the Court is not persuaded by Mr. Edwards's contention that the FSC should have been disclosed to him. The parties' Employment Contract did disclose the FSC by emphasizing the clause in all capital letters and bolded font. *See, e.g., Madanat v. First Data Corp.*, 2011 WL 208062, at *2 (N.D. Cal. Jan. 21, 2011) (finding no overreaching because agreement offered adequate notice of the FSC by including an electronic link to the FSC document available online).

Finally, Mr. Edwards's conclusion that Mr. Fennell is attempting to "home town" him in Burke County is both unsupported and not relevant to the analysis. *See, e.g, Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1141 (9th Cir. 2003) ("[A] differential in power or education . . . will not vitiate a forum selection clause.). Because Mr. Edwards's allegations of fraud and overreach fall far short of the types of allegations other courts have found sufficient, the FSC is not invalid on this ground. *Cf. Randhawa v. Skylux Inc.*, 2009 WL 5183953, at *12 (E.D. Cal. Dec. 21, 2009) (finding FSC unenforceable for fraud where parties orally negotiated the contract's terms, defendants did not inform him of the FSC provision, and then when plaintiff objected to the FSC, defendants assured him it had been deleted); *Petersen v. Boeing Co.*, 715 F.3d 276, 283 (9th Cir. 2013) (finding FSC unenforceable for fraud and overreach where plaintiff alleged he signed an initial employment contract that did not contain an FSC, traveled to his new workplace in Saudi Arabia, and upon arrival, was forced to sign a new employment contract containing the FSC or immediately return to the United States at his own expense).

*2. California Public Policy*

In support of his public policy challenge to the FSC, Mr. Edwards points to California Labor Code § 925, which prohibits an employer from requiring a California resident employee "to agree to a provision . . . [r]equiring the employee to adjudicate outside of California a claim arising in California" or "[d]epriv[ing] the employee of the substantive protection of California law." As Mr. Edwards concedes, however, the legislature did not enact Section 925 until January 1, 2017, four years after he agreed to the

7

FSC. Further, the statute expressly provides that it is *not* retroactive, stating that it "shall apply to a contract entered into, modified, or extended on or after January 1, 2017."

Although Mr. Edwards argues Section 925's public policy invalidates the FSC, he offers no other authorities for that contention. Section 925 cannot retroactively apply to invalidate an FSC agreed to more than four years before its enactment. Nor does Mr. Edwards raise any additional public policy that would invalidate the FSC. Therefore, the Court is not persuaded that enforcement of the parties' FSC contravenes California public policy.

### 3. Claims Subject to the FSC

Mr. Edwards further argues that the FSC does not cover most of his claims, and thus, most of his claims are not subject to transfer. Specifically, Mr. Edwards emphasizes the FSC's application to any "dispute hereunder," which he argues must be narrowly construed to not apply to his California Labor Code claims. In diversity actions, federal contract law governs the interpretation of an FSC's scope. *See Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018). As Mr. Edwards argues, the Ninth Circuit has narrowly construed provisions using the phrase, "arising hereunder," to "cover only those disputes 'relating to the interpretation and performance of the contract itself.'" *LaCross v. Knight Transportation, Inc.*, 95 F. Supp. 3d 1199, 1207 (C.D. Cal. 2015) (quoting *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922 (9th Cir. 2011)).

Still, even construing the language narrowly, the FSC applies to each of Mr. Edwards's claims because each of them is expressly connected to his allegation that he is owed commissions *under the Employment Agreement.* Therefore, each of his claims "relat[es] to the interpretation and performance of the [Employment Agreement]." *Id.* Mr. Edwards does not identify any cases showing that, by virtue of claiming violations of the California Labor Code, his claims arising out of the performance and interpretation of the parties' employment contract no longer "arise hereunder." Nor does Mr. Edwards allege misclassification of his employment status, an allegation that courts have found to be outside the coverage of the FSC's "arising hereunder" language. *See, e.g., Ronlake v. US-*

8

*Reports, Inc.*, 2012 WL 393614, at *4 (E.D. Cal. Feb. 6, 2012) (finding claim of misclassification as non-employee to be a dispute that did not arise under the interpretation and performance of the employment contract); *see also Narayan v. EGL, Inc.*, 616 F.3d 895, 899 (9th Cir. 2010) (finding choice of law provision did not apply to claims regarding misclassification because those claims "do not arise out of the contract, involve the interpretation of any contract terms, or otherwise require there to be a contract"). Accordingly, the Court finds the FSC covers all of Mr. Edwards's claims.

### 4. Public Interest Factors

Mr. Edwards further argues that, even if the FSC is enforceable, the public interest factors disfavor transfer. Public interest factors include: "(1) administrative difficulties flowing from court congestion; (2) imposition of jury duty on the people of a community that has no relation to the litigation; (3) local interest in having localized controversies decided at home; (4) the interest in having a diversity case tried in a forum familiar with the law that governs the action; [and] (5) the avoidance of unnecessary problems in conflicts of law." *Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 664 (9th Cir. 2009).

First, the Court agrees with Mr. Edwards's contention that the local interest in having the case decided in San Diego disfavors transfer. C4 Planning reached into San Diego County to recruit Mr. Edwards to work for them in San Diego. C4 Planning hoped to establish "a meaningful presence" in California with Mr. Edwards's help. Finally, Mr. Edwards supported C4 Planning's government contracting efforts at Camp Pendleton in San Diego County. Second, the Court also agrees with Mr. Edwards that the federal district court in the Southern District of California is presumably more familiar with Mr. Edwards's California Labor Code claims than a state court in Burke County, Georgia.

Mr. Edwards additionally contends that a third factor disfavors transfer—the imposition of jury duty on Burke County, Georgia jurors. As already discussed, C4 Planning has at least some connection to Burke County, and thus, the Court rejects Mr. Edwards argument to the contrary.

Finally, Mr. Edwards argues that because the bulk of his claims are not covered by the FSC, there would be two trials in two jurisdictions. For the reasons discussed previously, however, all of Mr. Edwards's claims are covered by the FSC, and this factor carries no weight.

Here, two public interest factors do weigh in favor of maintaining the case in the Southern District of California. When balanced against the enforceable FSC, however, those factors do not defeat C4 Planning's motion. *See Atlantic Marine Const. Co., Inc. v. U.S. Dist. Ct. for Western Dist. of Tex.*, 571 U.S. 49, 64 (2013) ("Because [public interest] factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases."). Without more, the present case is not the type of unusual case in which public interest factors outweigh the counterweight of an FSC. *See id.* ("Although it is conceivable in a particular case that the district court would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause, such cases will not be common.") (internal quotation marks and citations omitted). Accordingly, Mr. Edwards has not carried his "burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Id.* at 67.

*5. Remedy*

Having determined that the parties' FSC is valid and outweighs any public interest factors favoring Mr. Edwards's choice of venue, the Court must determine whether transfer or dismissal is the appropriate remedy. Here, the FSC provides the venue shall be "exclusively in a court of competent jurisdiction in Burke County, Georgia." [Doc. 4-1 at p. 5, ¶ 8(c).] Although the Southern District of Georgia covers Burke County, it is not physically located there. Rather, a Georgia state court in Waynesboro, Georgia is the only court located in Burke County. Accordingly, the parties' FSC clearly designates a Georgia state court.

Where a valid FSC points to a state venue, dismissal is the appropriate remedy. *See, e.g., Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081 (9th Cir. 2018) (affirming district court's dismissal for *forum non conveniens* where parties' FSC designated

10

California state court); *S&J Rentals, Inc. v. Hilti, Inc.*, 294 F. Supp. 3d 978, 990 (E.D. Cal. 2018) (granting motion to dismiss without prejudice because of parties' FSC pointing to Oklahoma state court); *In re Zynga S'holder Deriv. Litig.*, 2018 U.S. Dist. LEXIS 83536, at *8 (N.D. Cal. May 17, 2018) (granting motion to dismiss without prejudice because of parties' FSC pointing to Delaware Court of Chancery). To be sure, dismissal for *forum non conveniens* is a harsh result "[t]hat inconveniences plaintiffs in several respects." *Atlantic Marine*, 571 U.S. at 68, n. 8. Here, however, "dismissal would work no injustice on [Mr. Edwards]" because it was Mr. Edwards who "violated a contractual obligation by filing suit in a forum other than the one specified in a valid forum-selection clause." *Id.* Accordingly, C4 Planning's motion to dismiss for *forum non conveniens* is **GRANTED**. The action is **DISMISSED without prejudice**.

**IT IS SO ORDERED.**

Date: April 17, 2019

HON. ROGER T. BENITEZ
United States District Judge

11

3:18-cv-02144-BEN-AGS